CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

OCT 22 2021

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| ORION CAPITAL, LLC, ) | |
|     Plaintiff, ) | |
| ) | Case No. 4:21-cv-00015 |
| v. ) | |
| ) | By:    Michael F. Urbanski |
| PROMIER PRODUCTS, INC., ) | Chief United States District Judge |
|     Defendant. ) | |

### MEMORANDUM OPINION

This matter is before the court on defendant Promier Products, Inc.'s motion to dismiss for lack of personal jurisdiction, improper venue, and dismissal pursuant to the first-to-file rule. ECF No. 15. For the reasons stated below, the court will **GRANT** defendant's motion to dismiss for lack of personal jurisdiction.

### I.

Defendant Promier Products is an Illinois corporation, with its principal place of business in Illinois. ECF No. 15-1 at 5. Promier sells goods and personal protective equipment ("PPE") throughout the United States and China. Id. Matt Pell is the CEO of Promier, Cody Grandadam is its President, Michael Wollack is COO, and Timothy Turczyn is CFO. Id. During March 2020, Promier gained prominence in the PPE industry by supplying various government agencies and hospitals in Illinois. Id.

Plaintiff Orion Capital, LLC, is a Virginia limited liability corporation, and its sole member, Richard Hall, resides in Virginia. Richard Hall Decl., ECF No. 28. Hall is the managing member of Orion. ECF No. 21 at 1. In April 2020, a mutual contact of Hall and Grandadam introduced the two, specifically to discuss the viability of Hall assisting

Grandadam and Promier sell PPE to various entities of which Orion had previously established relationships. Id. at 2.

Following this meeting, Promier and Orion entered into an oral agreement in which Orion would assist Promier in its sale of PPE to various clients. ECF No. 15-1 at 6. Throughout the course of the parties' business venture, Promier sold approximately $28 million in PPE with Orion's assistance. Id. The parties disagree as to whether they entered into a joint venture, in which all profits would be equally split, or if Orion acted only as a sales representative for Promier. Orion states that it is owed over $6 million. ECF No. 21 at 3.

The first legal communication between the parties following this disagreement occurred on January 5, 2021. In Orion's letter to Promier, Orion threatened litigation if the parties could not reach resolution. First Stanley Letter to Grandadam, ECF No. 21-12, at 2. Orion did not receive a response from Promier, and again sent a letter indicating Orion would move forward with filing its suit on January 11, 2021. Second Stanley Letter to Grandadam, ECF No. 21-13, at 1. However, on January 13, 2021, Promier responded to the letters, asserting defenses and counterclaims against Orion should it decide to file suit against Promier. First Grandadam Letter to Stanley, ECF No. 21-14. On February 11, 2021, Orion responded to Promier's letter stating that while Orion is owed more than $6 million in damages, it would be willing to settle for $5,500,000, and gave Promier fourteen days to respond. Third Stanley Letter to Grandadam, ECF No. 21-5, at 2-7. On February 21, 2021, Promier sent Orion an email stating, "Please note that we continue to review your letter and exhibits and are working to get back to you. Thank you." Promier Email to Stanley, ECF No. 21-15, at 1.

However, while the parties were sending various correspondence to determine the status of their business relationship, and against Promier's direction, Orion continued interacting with Promier customers and using Promier's name to conduct PPE transactions. See First Grandadam Letter to Stanley, ECF No. 21-14; Matt Pell Decl., ECF No. 15-2, at ¶ 26. As such, on February 25, 2021, Promier declined Orion's offer to settle for $5,500,000, and notified Orion of Promier's February 24, 2021 suit filed in the Northern District of Illinois seeking (1) declaratory relief concerning Orion's contact with Promier's clients; (2) a declaration of the parties' relationship; and (3) clarification as to what damages, if any, Orion was entitled. ECF No. 21-16. On March 19, 2021, Orion brought suit in the Western District of Virginia, alleging breach of contract, unjust enrichment, and quantum meruit. Compl., ECF No. 1.

Promier then filed to dismiss the Virginia suit for lack of personal jurisdiction, improper venue, and dismissal pursuant to the first-to-file rule, arguing that Promier has no connection with this forum and that the Illinois litigation will adequately resolve all of the issues in this action. See ECF No. 15. Alternatively, Promier seeks to stay this case or transfer it to the Northern District of Illinois. Id. Orion opposes. ECF No. 21. The court heard argument, and the matters are ripe for resolution.

## II.

When a court considers "a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014) (citing Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d

273, 276 (4th Cir. 2009)). In determining if a plaintiff has met this burden, a court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). However, a court "need not 'credit conclusory allegations'" in determining whether a plaintiff has met his burden of making a prima facie showing of personal jurisdiction. Sonoco Prods. Co. v. ACE INA Ins., 877 F. Supp. 2d 398, 407 (D.S.C. 2012) (citing Masselli & Lane, PC v. Miller & Schuh, PA, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000)).

Before exercising personal jurisdiction over a non-resident defendant, a court must find that two conditions are satisfied. First, the state's long-arm statute must authorize exercise of jurisdiction in the circumstances presented. Second, the exercise of jurisdiction must comport with Fourteenth Amendment due process standards. Ellicott Mach. Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). The Fourth Circuit has interpreted Virginia's long-arm statute, Virginia Code § 8.01 – 328.1, as being coextensive with the Due Process Clause. English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990) (citing Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 313 (4th Cir. 1982)). Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry when assessing personal jurisdiction in Virginia.

> Fairness is the touchstone of the jurisdictional inquiry, and the 'minimum contacts' test is premised on the concept that a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there. In the context of specific jurisdiction, the relevant conduct must have only such a connection with the forum state that it is fair for the defendant to defend itself in that state. We do more than formulaically count contacts, instead

4

> taking into account the qualitative nature of each of the defendant's connections to the forum state. In that vein, a single act by a defendant can be sufficient to satisfy the necessary quality and nature of such minimal contacts, although casual or isolated contacts are insufficient to trigger an obligation to litigate in the forum.

Tire Eng'g v. Shandon Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012) (internal quotations and citations omitted).

The question, then, is whether defendant has sufficient "minimum contacts with [Virginia] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); Edwards v. Schwartz, 378 F. Supp. 3d 468, 488 (4th Cir. 2018). The "minimum contacts" test requires that defendants purposefully avail themselves of the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). This test aims to ensure defendants are not "hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," id., and affords defendants protection "from having to defend [themselves] in a forum where [they] should not have anticipated being sued[,]" Consulting Eng'rs, 561 F.3d at 277 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Orion bases its claim for jurisdiction on Promier's specific contacts with Virginia. In assessing specific jurisdiction, courts employ a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant comports with the requirements of due process. Courts evaluate "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction

5

would be constitutionally 'reasonable.'" UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 351-52 (4th Cir. 2020); Universal Leather, 773 F.3d at 559 (quoting Tire Eng'g, 682 F.3d at 301-02).

The first part of the test — purposeful availment — embodies International Shoe's minimum contacts requirement. The purposeful availment inquiry is grounded on the traditional due process concept of minimum contacts, which itself is based on the premise that "a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there." Tire Eng'g, 682 F.3d at 301 (citation and internal quotation marks omitted); see Int'l Shoe Co., 326 U.S. at 320 (examining whether the defendant has "establish[ed] sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which [the defendant] has incurred there"). Thus, in determining whether a foreign defendant has purposefully availed itself of the privilege of conducting business in a forum state, courts look to whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir. 1989) (quoting World-Wide Volkswagen, 444 U.S. at 297) (internal quotation marks omitted).

The purposeful availment analysis is a flexible one and depends on several factors that courts consider on a case-by-case basis. In the business context, those factors include, but are not limited to, an evaluation of:

> 1) whether the defendant maintains offices or agents in the forum state;

2) whether the defendant owns property in the forum state;
3) whether the defendant reached into the State to solicit or initiate business;
4) whether the defendant deliberately engaged in significant or long-term business activities in the State;
5) whether a choice of law clause selects the law of the State;
6) whether the defendant made in-person contact with a resident of the State regarding the business relationship;
7) whether the relevant contracts required performance of duties in the State; and
8) the nature, quality, and extent of the parties' communications about the business being transacted.

Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 198-99 (4th Cir. 2018).

The second part of the test determines whether the acts of Promier giving rise to the suit were directed at Virginia. The third part of the minimum contacts tests is whether the exercise of personal jurisdiction is constitutionally reasonable. Courts employ five factors to determine if exercising personal jurisdiction is constitutionally reasonable: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. Asahi Metal Indus. Co. v. Superior Ct. of Cal., 480 U.S. 102, 113 (1987) (citing World-Wide Volkswagen, 444 U.S. at 292).

Promier argues that none of the Sneha Media factors weigh in favor of personal jurisdiction. See ECF No. 15-1 at 18-24. It alleges that (1) it maintained no offices in Virginia; (2) it maintained no property in Virginia; (3) it did not reach into Virginia to solicit or initiate business; rather, Orion reached into Illinois, through a mutual friend, seeking out business

7

with Promier; (4) it did not engage in significant or long-term business in Virginia; (5) the oral contract contains no choice of law clause; (6) Promier never made in-person contact with Orion in Virginia; (7) the oral contract did not require performance in Virginia; and (8) all contact was done via the Internet. Id. Moreover, Promier contends that pursuant to Walden v. Fiore, 571 U.S. 277 (2014), and Perdue Foods LLC v. BRF S.A., 814 F.3d 185 (4th Cir. 2016), Orion fails to meet its prima facie burden of showing personal jurisdiction.

In Walden, Anthony Walden served as a police officer in Georgia and was a deputized agent of the DEA working at the Atlanta Hartsfield-Jackson Airport. Walden, 571 U.S. at 279. On August 8, 2006, at the San Juan, Puerto Rico airport, TSA agents searched Gina Fiore, her travel companion, and their carry-on bags, finding almost $97,000 in cash. Fiore told the San Juan DEA agents that they were professional gamblers and won the money at a casino. Fiore also stated that they maintained residences in California and Nevada. Both Fiore and her companion were cleared for departure, but a San Juan DEA agent informed Atlanta DEA agents that Fiore boarded a plane headed to a connecting flight in Atlanta on her way to Nevada. After arriving in Atlanta, Fiore was approached by Walden and another DEA agent. Fiore again explained that they were professional gamblers and the money they were carrying was their winnings and "gambling 'bank.'" Id. at 280. Drug-sniffing dogs were used to perform a sniff test, and Walden seized Fiore's cash.[1] Walden informed Fiore that the money would be returned once she could provide a "legitimate source for the cash," and Fiore boarded the plane to Nevada. Id. Walden then transported the cash to a secure location.

---

[1] The pleadings do not indicate that drugs or drug residue were found. Walden, 571 U.S. at 280 n.1.

8

In the days immediately following the incident, Walden received several calls from Fiore's attorney seeking to recover the seized funds and received documents from Fiore's attorney confirming the funds' legitimacy. Rather than return the funds, Walden helped to draft an affidavit showing probable cause to seize the funds and sent the affidavit to the United States Attorney's Office in Georgia. The DEA eventually returned the funds in March 2007. Fiore then brought a Bivens claim against Walden in the U.S. District Court for the District of Nevada.[2] The district court granted Walden's motion to dismiss, finding that the Georgia search and seizure of Fiore's cash did not form a basis to exercise personal jurisdiction over Walden in Nevada. On appeal, the Ninth Circuit affirmed the district court on the lack of personal jurisdiction as regards the cash search and seizure but reversed the district court on the lack of personal jurisdiction as regards Walden's prepared affidavit. The appellate court held that "[Walden] 'expressly aimed' his submission of the allegedly false affidavit at Nevada by submitting the affidavit with knowledge that it would affect persons with a 'significant connection' to Nevada." Id. at 282.

The Supreme Court reversed, holding that "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Id. at 285. The Court states several factors to weigh in order to determine whether the exercise of personal jurisdiction over a nonresident defendant comports with the Due Process Clause: (1) whether the "defendant himself," through his own contacts, has created a substantial connection between his suit-related conduct and the forum state; (2) whether the

---

[2] In Bivens v. Six Unknown Fed. Narcotics Agents, 403, U.S. 388, 395-97 (1971), the Supreme Court held that an individual may bring suit seeking damages when a federal officer violates a person's Fourth Amendment rights by unlawful search and seizure.

9

defendant's contacts reside with the forum state itself or simply with the persons who reside in the forum state; and (3) whether the plaintiff is the only link between the defendant and the forum. Id. at 285-86.

Applying these factors to Walden, the Court found that the Ninth Circuit erroneously shifted the focus from Walden's contacts with Nevada to his contacts with Fiore. Because Walden did not search or seize the cash in Nevada, did not send the affidavit to Nevada, did not travel to Nevada, nor had any meaningful connection to Nevada, the Court held that Walden had no jurisdictionally relevant contacts with Nevada. Id. at 288-89. Moreover, the Court stated that even if Walden had knowledge of Fiore's connection to Nevada, this knowledge alone is insufficient to exercise personal jurisdiction. Id. at 289; see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty., 137 S. Ct. 1773, 1781 (2017) ("[T]here must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.") (internal citations omitted).

In Perdue Foods, the Fourth Circuit further articulated that there must be a forum-specific connection between the forum and the controversy. See Perdue Foods, 814 F.3d at 191-92. There, Perdue Foods, headquartered in Maryland, and BRF, headquartered in Brazil, remotely executed a trademark and trademark application agreement which contained a Maryland choice-of-law clause. Perdue later filed suit against BRF in Maryland, alleging breach of their trademark agreement. BRF moved to dismiss for lack of personal jurisdiction, and the district court granted BRF's motion, stating that BRF did not have the requisite minimum

contacts in Maryland. The Fourth Circuit affirmed, holding that the trademark agreement did not establish personal jurisdiction over BRF:

> [BRF] employs no Maryland officers or agents and owns no property in the state. BRF did not initiate the negotiations that led to the Agreement, and no BRF employee traveled to Maryland in connection with the Agreement. BRF's alleged breach of the Agreement occurred not in Maryland, but in the Foreign Countries. Further, the Agreement does not even require Perdue to perform any contractual duties in Maryland . . . [nor does this Agreement] establish a series of continuing contacts between BRF and Perdue in Maryland.

Perdue Foods, 814 F.3d at 189-91.

In response, Orion addresses personal jurisdiction in a mere two paragraphs. See ECF No. 21 at 20-21. Orion vaguely asserts that the court "clearly has personal jurisdiction over both parties" and "the contract between the Plaintiff and the Defendant was entered into and performed in Virginia." ECF No. 21 at 21. In support of exercising personal jurisdiction, Orion states that its members performed the following acts in Virginia in furtherance of the parties' agreement:

> (1) Established contacts and relationships with existing and new clients or the purchase of PPE;
> (2) Registered Promier with states, governmental agencies and private industries as qualified supplier of PPE;
> (3) Fostered direct purchaser-based interactions with PPE buyers to culminate in executed purchase orders;
> (4) Negotiated all contracts, included product, terms and conditions of delivery and unit pricing with the Purchaser;
> (5) Coordinated the logistics for delivery of the products sold to the Purchaser;
> (6) Ensured that satisfactory product, and in the exact quantity ordered, was in fact delivered to, and accepted by the purchaser;
> (7) Generated all invoices generated by the sale and purchase of the PPE and delivered them to the Purchaser for payment of the accepted product; and


> (8) Shepherded payment for the product from the purchaser directly to Promier.

ECF No. 21 at 19; see also Richard Hall Aff., ECF No. 21-2, at ¶ 23; Scott Weiland Aff., ECF No. 21-8, at ¶ 35.

The court is not persuaded by Orion's argument. First, Orion simply makes conclusory statements asserting that personal jurisdiction is reasonable. These scant allegations alone are insufficient to support exercising personal jurisdiction. See Sonoco Prods., 877 F. Supp. 2d at 407. Second, like Walden, Promier has no meaningful contacts with Virginia. The alleged breach of the parties' agreement concerns entities outside of Virginia, Promier never traveled to Virginia, Promier has no offices in Virginia, nor does Promier own property in Virginia. Third, similar to Perdue Foods, Orion's contract with Promier did not require Orion to perform any duties in Virginia. Matt Pell Decl., ECF No. 15-2, at ¶ 21 ("It was not important to Promier that Hall lived in Virginia—his work could have been done from anyplace."). Moreover, Promier and Orion's agreement did not establish a series of continuing contacts between the parties in Virginia. In fact, Orion was free to establish contacts with entities throughout the country. Indeed, each contract in dispute in this case is located outside of Virginia. Fourth, although Orion states that the contract was entered into in Virginia, "[m]ere execution by [Promier] of a contract in [Virginia], however, does not give rise to personal jurisdiction." Szulik v. TAG Virgin Islands, Inc., 783 F. Supp. 2d 792, 795 (E.D.N.C. 2011) (citing Le Bleu Corp. v. Standard Cap. Group, Inc., 11 F. App'x 377, 379-81 (4th Cir. 2001)); Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 478 (4th Cir. 1993).

In sum, Orion has not alleged sufficient facts to support exercising personal jurisdiction over Promier in Virginia. Furthermore, Orion has presented no case law to support its

argument. As such, Promier's motion to dismiss for lack of personal jurisdiction should be granted.[3]

### III.

For these reasons, Orion has failed to establish that this court has personal jurisdiction over Promier Products. As such, defendant's motion to dismiss is **GRANTED**. The Clerk is **DIRECTED** to close this case, and it is **STRICKEN** from the active docket of the court.

An appropriate order will be entered.

Entered: October 22, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.10.22 10:56:01 -04'00'

Michael F. Urbanski
Chief United States District Judge

---

[3] Because there is no personal jurisdiction, the court need not reach the question of whether venue is improper or if the first-to-file rule is applicable.

13